IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JASON J. DOMINICK,** | : | CIVIL ACTION NO. 1:21-CV-555 |
| | : | |
| Petitioner | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **MARK CAPOZZA,** *et al.*, | : | |
| | : | |
| Respondents | : | |

## MEMORANDUM

This is a habeas corpus case filed pursuant to 28 U.S.C. § 2254. Petitioner, Jason J. Dominick, challenges his 2014 conviction for third-degree murder and conspiracy to commit third-degree murder in the Lackawanna County Court of Common Pleas. The case has been stayed since March 14, 2023 pursuant to the court's order granting Dominick's motion to stay so that he could attempt to exhaust a new claim in the state courts of Pennsylvania. Dominick moved to lift the stay on September 7, 2023 and asserted that no amendment of his petition is necessary because he has withdrawn his new claim. We will grant the motion, lift the stay, and deny the petition with prejudice.

**I.     Factual Background & Procedural History**

The Pennsylvania Superior Court has succinctly summarized much of the relevant background and procedural history. See Commonwealth v. Dominick, No. 60 MDA 2015, 2016 WL 71901 (Pa. Super. Ct. Jan. 5, 2016). On July 19, 2013, Dominick attended a party hosted by his friend, Neil Pal. Id. at *1. Frank Bonacci, a rival of Dominick's for the romantic affections of Keri Tucker, arrived at the party

at approximately 2:30 a.m. on July 20, 2013.  Id.  Around 6:00 a.m., Dominick, Pal, Bonacci, and another individual, Brandon Emily, were sitting on the back deck of Pal's home.  Id.  Emily was waiting for his friend to pick him up from the party when Pal said that he and Dominick were going to drive Bonacci home.  Id.  Emily watched the three individuals leave the party and walk towards Bonacci's jeep.  Id.  A short time later, around 6:51 a.m., a surveillance camera located at the University of Scranton filmed the jeep crossing a railroad track and approaching an access road for Roaring Brook Step Falls.  Id.  At 7:18 a.m., Pal called his friend, Maribeth Cataldi, and asked her to pick him and Dominick up from a berm on the side of Route 81 in the vicinity of Roaring Brook Step Falls.  Id.

On July 27, 2013, Scranton police officers recovered Bonacci's deceased body inside his jeep at the bottom of a ravine near Roaring Brook Step Falls.  Id.  The body had a single wound to the back of the head caused by a "wadcutter type bullet" from a ".38 special."  Id.  A large rock was wedged on the jeep's gas pedal, and tire marks at the top of the ravine indicated that the jeep had entered the ravine at a high rate of speed.  Id.  Police later determined that Bonacci had been killed by a bullet fired from a gun owned by Pal.  Id.  Dominick was charged with criminal homicide in the Lackawanna County Court of Common Pleas.  Id.

At trial, Dominick's fellow inmate at Monroe County Prison testified that Dominick told him he shot Bonacci with a gun owned by Pal and that Dominick and Pal then put a rock on the gas pedal of the jeep and drove it over a cliff.  Id.  The jury found Dominick not guilty of first-degree murder and conspiracy to commit first-degree murder, but found him guilty of third-degree murder and conspiracy to

commit third-degree murder.  Id.  The trial court sentenced him to two consecutive sentences of 20 to 40 years in prison, resulting in an aggregate sentence of 40-80 years of imprisonment.  Id.  Dominick appealed to the Pennsylvania Superior Court, arguing, *inter alia*, that conspiracy to commit third-degree murder is not a cognizable offense under Pennsylvania law.  Id. at *2.  The superior court affirmed the judgment of sentence on January 5, 2016.  Id. at *9.  Dominick filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied on June 29, 2016.  Commonwealth v. Dominick, 141 A.3d 478 (Pa. 2016).

Dominick filed a petition for state collateral relief under Pennsylvania's Post-Conviction Relief Act ("PCRA") on June 5, 2017.  Commonwealth v. Dominick, No. 13 CR 2273, 2019 WL 2407705, at *8 (Lackawanna Cnty. Ct. Com. Pl. June 7, 2019).  The court of common pleas appointed counsel to represent Dominick, after which he filed an amended PCRA petition through counsel on August 31, 2017.  Id.  The trial court conducted two evidentiary hearings on Dominick's request for PCRA relief and allowed Dominick to file a second amended PCRA petition on November 28, 2018.  Id.  The court then denied the petition on June 7, 2019.  Id. at *38.

Dominick appealed to the Pennsylvania Superior Court, arguing, in relevant part, that his trial counsel provided ineffective assistance of counsel by (1) failing to object to misleading jury instructions provided by the court; (2) failing to hire a bloodstain expert; (3) failing to investigate bloodstain evidence; and (4) failing to admit his ballistics expert's curriculum vitae ("CV") into evidence.  Commonwealth v. Dominick, 240 A.3d 205, No. 1010 MDA 2019, 2020 WL 5057034, at *2 (Pa. Super. Ct. Aug. 27, 2020).  The superior court affirmed the denial of PCRA relief on August

27, 2020. Id. at *12. Dominick petitioned for allowance of appeal to the Pennsylvania Supreme Court, which denied the petition on February 17, 2021. Commonwealth v. Dominick, 249 A.3d 253 (Pa. 2021).

Dominick filed the instant petition on March 26, 2021. (Doc. 1 at 14). He raises five claims for habeas corpus relief: (1) that trial counsel was ineffective for failing to object when the trial court instructed the jury that Dominick could not be found guilty of conspiracy to commit murder if he was found not guilty with respect to the murder charges; (2) that trial counsel was ineffective in failing to call Stewart James as an expert witness to rebut the Commonwealth's expert testimony regarding the blood stains in the vehicle; (3) that trial counsel was ineffective in failing to admit into evidence the CV of Dominick's ballistics expert, Emanuel Kapelsohn; (4) that Dominick's due process rights were violated when he was convicted of conspiracy to commit third-degree murder because that is not a cognizable offense under Pennsylvania law; and (5) that counsel was ineffective by failing to obtain further gunshot residue testing and further testing on glass fragments recovered near the scene of the murder. (Id. at 5-11).

Respondent[1] responded to the petition on May 14, 2021, arguing that several of Dominick's claims should be dismissed for failure to exhaust state court remedies

---

[1] Dominick has named the Attorney General of Pennsylvania and the District Attorney of Lackawanna County as respondents, but the proper respondent in a habeas corpus action is the warden or superintendent of the facility where the petitioner is being held. Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). We will accordingly direct the Clerk of Court to terminate all respondents except for Superintendent Mark Capozza and will refer to Capozza as "respondent" for the remainder of this opinion.

and that the petition should be denied on its merits.  (Docs. 8-9).  Dominick filed a reply brief in support of the petition on June 16, 2021.  (Doc. 11).

On September 29, 2022, Dominick moved to stay the case so that he could attempt to exhaust a new claim for habeas corpus relief in the state courts of Pennsylvania relating to alleged misconduct by detectives and attorneys in negotiating an agreement for a witness to testify against him.  (Doc. 14).  The court granted the motion to stay on March 14, 2023, directed Dominick to file a PCRA petition advancing the new claim in state court within 60 days, and administratively closed the case during the stay.  (Doc. 18).

Dominick filed a PCRA petition on May 5, 2023.  (See Doc. 19).  On August 3, 2023, however, he moved to withdraw the PCRA petition because there was insufficient evidence to support his new claim.  (Doc. 20).  Dominick has accordingly moved to lift the stay of this case because he is no longer seeking to exhaust a new habeas corpus claim in state court.  (Id.)  He represents that no amendment of his original habeas corpus petition is necessary.  (Id.)  Thus, because it appears that Dominick's petition is ripe for review, the court will grant the motion to lift the stay, reopen the case, and proceed to consideration of the petition.

**II.    Discussion**

**A.    Exhaustion**

We first consider respondent's argument that several of Dominick's claims should be dismissed for failure to exhaust state court remedies because he failed to advance the claims before the Pennsylvania Supreme Court after litigating them in the Pennsylvania Superior Court.   (Doc. 9 at 8-11).

5

Under a standing order from the Pennsylvania Supreme Court, petitioners are not required to appeal a claim to the Pennsylvania Supreme Court to exhaust available state court remedies for purposes of federal habeas corpus relief. See In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, No. 218, Judicial Administration Docket No. 1, 30 Pa.B. 2582 (May 9, 2000), available at http://www.pacodeandbulletin.gov/Display/pabull?file=/secure/pabulletin/data/vol30/30-22/881.html [hereinafter Order 218]. Respondent acknowledges the existence of Order 218, but argues that if a petitioner files a petition for allowance of appeal to the Pennsylvania Supreme Court, "he needs to exhaust all claims to later be raised in a federal habeas petition by raising them in the petition for allowance of appeal." (Doc. 9 at 9).

Respondent does not cite, and the court is unaware of, any controlling precedent that has adopted this reading of Order 218.[2] Based on the plain language of Rule 218, respondent's argument appears to be incorrect. See Order 218 ("When a claim has been presented to the Superior Court, or to the Supreme Court of Pennsylvania, and relief has been denied in a final order, the litigant shall be deemed to have exhausted all available state remedies for purposes of federal habeas corpus relief."). Moreover, respondent's argument would lead to the

---

[2] Respondent cites Atwell v. Lane, No. 1:15-CV-1583, 2017 WL 2957869, at *8 (M.D. Pa. July 11, 2017) for the proposition that a claim asserted before the superior court may be deemed abandoned if the petitioner fails to advance the claim in a petition for allowance of appeal to the Pennsylvania Supreme Court. The Atwell court did not cite Rule 218 in its opinion, and it is unclear whether the court intended to state a rule of law for exhaustion of state court remedies that would apparently contradict the plain language of Rule 218.

incongruous result that a petitioner who has filed a petition for allowance of appeal to the Pennsylvania Supreme Court advancing some, but not all, of his claims may have claims dismissed for failure to exhaust state court remedies, while a petitioner who does not file any petition with the supreme court would be deemed to have fully exhausted state court remedies. We are unpersuaded by respondent's argument that Dominick has failed to exhaust state court remedies and proceed to consideration of the merits of his claims.

### B. Merits

Dominick's claims were decided on their merits in state court and are accordingly governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which states in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The standard for obtaining habeas corpus relief under AEDPA is "difficult to meet." Mays v. Hines, 592 U.S. __, 141 S. Ct. 1145, 1149 (2021) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)). Federal habeas corpus relief is meant to guard against "extreme malfunctions in the state criminal justice systems" and is not

7

meant to substitute for "ordinary error correction through appeal." Harrington, 562 U.S. at 102-03 (citing Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J. concurring in judgment)). "Federal habeas courts must defer to reasonable state-court decisions," Dunn v. Reeves, 594 U.S. __, 141 S. Ct. 2405, 2407 (2021), and may only grant habeas corpus relief when the state court's decision "was so lacking in justification" that its error was "beyond any possibility for fairminded disagreement." Mays, 141 S. Ct. at 1149 (quoting Harrington, 562 U.S. at 102). When a claim has been decided on its merits in state court, federal court review of the claim is "limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

We first consider Dominick's argument that his due process rights were violated when he was convicted of conspiracy to commit third-degree murder because conspiracy to commit third-degree murder is not a cognizable offense under Pennsylvania law. (Doc. 1 at 9). This argument is without merit. As the superior court noted, see Dominick, 2016 WL 71901, at *2, the argument is precluded by the Pennsylvania Supreme Court's holding in Commonwealth v. Fisher, 80 a.3d 1186, 1187, 1195-96 (Pa. 2013) that conspiracy to commit third-degree murder is a cognizable offense under Pennsylvania law.

Turning to the ineffective assistance of counsel claims, petitioners seeking a writ of habeas corpus based on purportedly ineffective assistance by trial counsel must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that counsel's deficient performance caused prejudice to the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984). The court's analysis

8

as to whether counsel's performance was deficient must be "highly deferential" to counsel, and the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. To establish that counsel's performance caused prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

The court's analysis is "doubly deferential" when a state court has already decided that counsel's performance was adequate. <u>Dunn</u>, 141 S. Ct. at 2410. The court must apply a high level of deference both to counsel's actions and to the state court's determination that counsel's actions were constitutionally adequate. <u>Id.</u>; <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (citing <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6 (2003)). The federal court may only grant habeas corpus relief if "*every* 'fairminded jurist' would agree that *every* reasonable lawyer would have made a different decision." <u>Dunn</u>, 141 S. Ct. at 2411 (emphasis in original) (quoting <u>Harrington</u>, 562 U.S. at 101).

Dominick's first ineffective assistance of counsel argument is that counsel was ineffective for failing to object when the trial court instructed the jury that Dominick could not be found guilty of conspiracy to commit murder if he was found not guilty with respect to the murder charges. (Doc. 1 at 5). In the relevant jury instruction, which was given in response to a question from the jury during deliberations, the court instructed the jury that it could not convict Dominick of conspiracy if it did not convict him of one of the murder charges. <u>Dominick</u>, 2020

WL 5057034, at *4. Dominick asserts that this instruction "impermissibly steered" the verdict towards conviction for third-degree murder. (Doc. 1 at 5).

The superior court acknowledged that a conviction for conspiracy would be difficult to reconcile with a not guilty verdict on the murder charges because "the sole overt act alleged" in support of the conspiracy charge was "Dominick killing Bonacci." Dominick, 2020 WL 5057034, at *4. Based on the language of the verdict slip given to the jury, however, the court concluded that "the jury could have . . . convicted Dominick of conspiracy to commit third-degree murder without having found him guilty of third-degree murder even though the conspiracy's singular overt act alleged was, effectively, the third-degree murder." Id.

Despite this apparent inconsistency between the verdict slip and the court's instruction to the jury, the superior court found that Dominick "failed to establish that the outcome of the proceedings would have been different but for counsel's failure to object to the instruction." Id. The court acknowledged Dominick's argument that it was "conceivable" that the jury convicted him of third-degree murder despite insufficient evidence to support the conviction just so that it could convict him of conspiracy, but the court found that this argument "contort[ed]" the facts "by providing a situation that is disparate from the sequential order of the verdict slip." Id. at *5. Contrary to Dominick's argument, the court reasoned, the jury was instructed to not consider Dominick's guilt on the conspiracy charge until it had reached a verdict on the third-degree murder charge. Id. The court additionally noted that trial counsel had a reasonable basis for not objecting to the

jury instruction "because the jury's question seemed to indicate that it was leaning towards a finding of not guilty for all charges." Id.

We find that the superior court's conclusion was reasonable and not contrary to clearly established federal law. As the superior court noted, the jury asking during deliberations whether it could convict Dominick of conspiracy without convicting him of murder suggests that the jury was leaning towards acquittal on all charges. Counsel's decision to not object to the court's instruction is reasonable under these circumstances because an objection could have lessened the chances of Dominick being acquitted. Dominick characterizes this decision as a "gamble," but it appears to have been an informed and rational strategy.

Moreover, the superior court reasonably concluded that Dominick failed to establish prejudice caused by counsel's actions. Dominick's assertion that the court's instruction steered the jury to convict him for third-degree murder is pure speculation as to what the jury was thinking.

Dominick's second ineffective assistance of counsel claim argues that counsel was ineffective in failing to call Stewart James as an expert witness to rebut the Commonwealth's expert testimony regarding the blood stains in the vehicle. (Id. at 6). Dominick asserts that expert testimony from James could have supported an "alternative theory that the shot could have been fired by Neil Pal from the driver's seat" of the jeep instead of by Dominick from the back seat. (Id.)

The superior court denied this claim on the merits, finding that Dominick had not established prejudice from counsel's failure to call an expert witness. Dominick, 2020 WL 5057034, at *8. The court noted that the expert witness was

11

unable to state with certainty during the PCRA evidentiary hearing that Dominick was not the shooter. Id. The court additionally held that counsel's representation did not fall below an objective standard of reasonableness because he effectively cross-examined the Commonwealth's expert witness. Id.

We find the superior court's conclusion reasonable and not contrary to clearly established federal law. Dominick's expert witness testified during the PCRA hearing that he could not be certain who fired the shot that killed Bonacci and that the shot could have come from either the front seat or the back seat of the jeep. (See Doc. 8-6 at 6-8, 10, 17). Based on this testimony, it appears that Dominick did not suffer prejudice from counsel's failure to call the expert witness because the witness's testimony was tenuous at best. He would not have rebutted the testimony of the Commonwealth's expert testimony.

Dominick next argues that counsel was ineffective for failing to admit his ballistics expert's CV into evidence. (Doc. 1 at 8). In testimony during the PCRA evidentiary hearing, counsel acknowledged that failing to admit the CV was a mistake. Dominick, 2020 WL 5057034, at *10. Nevertheless, the superior court considered and denied this claim on its merits because Dominick failed to establish prejudice. Id. The court noted that the ballistics expert's testimony highlighted all pertinent details of his CV, including:

> (1) his extensive firearms training; (2) his extensive employment as a professional firearms trainer, training police, police instructors, federal agents, SWAT teams, military personnel, and security personnel; (3) his position as a board member of the International Association of Law Enforcement Firearms Instructors; (4) his experiences evaluating shootings; (5) his previous experience as an expert witness in over 250 cases; (6) his background knowledge, through writing large portions of

12

> police training curriculum and his own experiences, regarding the rare likelihood that anyone would transfer a gun to his non-dominant hand to fire it (part of Dominick's theory of the case, casting doubt on his likelihood as the shooter); and (7) his educational experience, graduating from Yale University and Harvard Law School.

Id. The court further noted that Dominick failed to mention "any crucial pieces of information that the jury did not have the benefit of hearing absent having physically reviewed the expert's curriculum vitae or how having that information would have altered the course of the trial." Id.

We find this conclusion reasonable and not contrary to clearly established federal law. It does not appear that admitting the CV into evidence would have altered the outcome of trial given that the jury heard extensive testimony from the ballistics expert about his qualifications and expertise on the subject matter of his testimony. Hence, we will deny this claim for habeas corpus relief.

Finally, Dominick argues that counsel was ineffective in failing to obtain further gunshot residue testing and further testing on the glass from the jeep's front window. (Doc. 1 at 11). Dominick notes that his ballistics expert called for further testing to be done in his April 11, 2014 report and again in his trial testimony but that counsel did not request the testing on the record.[3] (Id.; Doc. 5 at 32). Dominick contends that additional testing would have lent support to his theory that Pal fired

---

[3] Counsel represented during the PCRA hearing that he requested the testing in the trial court's chambers and that the judge denied it, but counsel did not request the additional testing on the record. See (Doc. 5 at 33); Dominick, 2020 WL 5057034, at *9.

13

two shots, one of which killed Bonacci, the other of which broke the jeep's window. (Doc. 1 at 11; Doc. 5 at 34-35).

The superior court denied this claim on its merits. With respect to testing of glass fragments, the court agreed with the court of common pleas' conclusion that the fragments were of "dubious relevance and questionable origin" because they "were found by Dominick's private investigator on a frequently traversed access road months after the murder took place." Dominick, 2020 WL 5057034, at *9. Because Dominick "[did] not attempt to provide any further explanation or proof that could possibly tie the existence of those glass fragments to Bonacci's vehicle," the court found that he failed to establish that his ineffective assistance of counsel claim had arguable merit. Id. "Even if trial counsel would have requested . . . glass fragment testing," the court continued, "we cannot conclude it would have been granted." Id.

We find that this conclusion is reasonable and not contrary to clearly established federal law. An objection by counsel seeking further testing of the glass fragments would have had little chance of success given the "dubious" and "questionable" nature of the fragments as evidence. Trial counsel cannot be found ineffective for failing to raise a meritless objection. Real v. Shannon, 600 F.3d 302, 309 (3d Cir. 2010); United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

The superior court likewise held that Dominick failed to establish arguable merit with respect to the testing of the gunshot residue. Dominick, 2020 WL 5057034, at *9. The court noted that testing on the gunshot residue found in the vehicle had already been done and that Dominick had not produced evidence

14

indicating "how this newly suggested testing would be performed and how it would differ from the testing that had already been conducted." Id. Furthermore, the court observed that additional testing would necessitate a continuance of trial. Id. Given that trial had already been continued multiple times, the court of common pleas "indicate[d] that counsel would not 'have succeeded in securing another continuance for additional testing to be completed.'" Id. Hence, the superior court found no merit to the ineffective assistance of counsel claim because an objection seeking additional testing of the gunshot residue would not have been granted. Id.

This conclusion is reasonable and not contrary to clearly established federal law. As noted above, counsel cannot be considered ineffective for failing to raise an objection that would have been overruled by the trial court. See Real, 600 F.3d at 309; Sanders, 165 F.3d at 253.

### III.   Conclusion

We will grant Dominick's motion to lift the stay, reopen this case, and deny the petition for writ of habeas corpus with prejudice. A certificate of appealability will not issue because no reasonable jurist would disagree with this ruling or conclude that the issues presented are adequate to deserve encouragement to proceed further. Buck v. Davis, 580 U.S. 100, 115 (2017) (citing Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)). An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   October 11, 2023